**Certiorari Denied, October 17, 2013, No. 34,325**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-104**

**Filing Date: August 19, 2013**

**Docket No. 31,178**

**IN THE MATTER OF THE ESTATE
OF HARBHAJAN SINGH KHALSA
YOGIJI, Deceased,**

**INDERJIT KAUR PURI,**

      **Petitioner-Appellant,**

**v.**

**SHAKTI PARWHA KAUR KHALSA,**

      **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge**

The Soni Law Firm
Surjit P. Soni
Pasadena, CA

for Appellant

Sanders & Westbrook, PC
Maureen A. Sanders
Albuquerque, NM

Wray & Girard, PC
Jane Katherine Girard
Katherine Wray
Albuquerque, NM

for Appellee

1

**OPINION**

**FRY, Judge.**

**{1}** This case requires us to interpret NMSA 1978, Section 45-3-108(A)(4) (2011), which provides an exception to the Probate Code's three-year time limit for opening a formal testacy or appointment proceeding under certain circumstances. Under this exception, a personal representative appointed more than three years after the decedent's death has the right to possess estate assets only to the extent necessary to confirm title in those assets, and no claims, other than for administrative expenses, may be asserted against the estate. The district court permitted the initiation of a formal testacy proceeding but restricted the personal representative's investigation of the estate's assets to those assets that had not previously been transferred to the decedent's trust. We conclude that these restrictions were the result of an improper interpretation of the applicable statute and reverse.

## I.    BACKGROUND

**{2}** Inderjit Kaur Puri (Wife), the wife of the decedent Harbhajan Singh Khalsa Yogiji (Decedent), filed a petition seeking the formal probate of her husband's will and appointment of a personal representative over four years after Decedent's death. No appointment or probate proceeding had been filed in connection with Decedent's estate between Decedent's death and the date of Wife's petition. The petition stated that it was brought pursuant to Section 45-3-108(A)(4) "for the limited purpose of confirming title to the assets of the estate in the successors to the estate."

**{3}** Section 45-3-108(A) prohibits the initiation of a formal testacy or appointment proceeding more than three years after a decedent's death unless certain exceptions apply. In this case, Wife sought to take advantage of Subsection (4)'s exception, which permits a late filing of a proceeding but prohibits the assertion of claims against the estate other than claims for administrative expenses. The exception also restricts the personal representative's right to possess estate assets. The exception provides:

> A.    No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to probate a will previously probated at the testator's domicile or appointment proceedings relating to an estate in which there has been a prior appointment, may be commenced more than three years after the decedent's death, except:
>
> . . . .
>
> (4)    an informal appointment in an intestate proceeding or a formal testacy or appointment proceeding may be commenced thereafter if no proceeding[] concerning the succession or estate administration has occurred within the three-year period after the decedent's death, but the

personal representative has no right to possess estate assets as provided in [NMSA 1978,] Section 45-3-709 [(1975)] beyond that necessary to confirm title thereto in the successors to the estate and claims other than expenses of administration may not be presented against the estate[.]

Section 45-3-108(A)(4). In this Opinion, we refer to this exception as Subsection (4).

**{4}** Decedent's will, which was attached to Wife's petition, contained three specific devises of certain of Decedent's personal property to persons other than Wife and a provision requiring the residue of Decedent's estate to be transferred to a trust. The will recited that Decedent and Wife had "mutually agreed upon a plan of disposition of [their] assets which is set forth in this [w]ill and the [t]rust described above." The will also nominated Shakti Parwha Kaur Khalsa, a devisee under the will, as executor.

**{5}** Ms. Khalsa filed objections to Wife's petition, stating that to the best of her knowledge, "there are no assets in the estate the title to which can be confirmed" because all assets had been transferred to the trust and were to be administered by way of the trust. Ms. Khalsa further objected on the ground that Wife's petition did not fall within the exception to the three-year limitation period permitted by Subsection (4).

**{6}** The district court held several hearings on Wife's petition and Ms. Khalsa's objections. At the hearings, the parties informed the court about a separate proceeding that could impact the proceedings in the present case. The separate proceeding was a declaratory judgment action that Ms. Khalsa and the other trustees of Decedent's trust had initiated against Wife before Judge James Hall to determine the validity of claims Wife was asserting against the trustees. In that case, which we refer to as the trust litigation, Wife filed counterclaims seeking an accounting and alleging that the trustees had breached their fiduciary duties.

**{7}** At the hearings in the present case, Ms. Khalsa urged the court to deny Wife's petition for appointment of a personal representative because the circumstances did not satisfy the limitations exception in Subsection (4). Ms. Khalsa claimed that there was no asset in the estate to which title could be confirmed due to the transfer of assets into the trust upon Decedent's death. In response, Wife argued that because there had never been a personal representative appointed, there had never been a determination of what assets belonged to Decedent at the time of his death in the form of either his separate property or his half of the community property and, as a result, it was unclear whether Decedent had improperly disposed of any portion of Wife's half of the community property. Wife maintained that all assets were initially controlled by Decedent's will and that the residual assets should not have been transferred to the trust until all assets had first been identified. The problem, according to Wife, was that a personal representative had never been appointed, and an inventory of assets had never occurred. Consequently, Wife urged the district court to appoint an independent personal representative to investigate what assets existed when Decedent died in order to determine what assets belonged to Decedent and

3

which belonged to Wife.

**{8}**     The district court formally probated Decedent's will and appointed Christopher Cullen as personal representative in a supervised administration. Cullen's appointment was subject to two prior orders entered by the district court. The first order stated that the personal representative was to determine "whether any assets were owned by [Decedent] and [Wife] on [the date of Decedent's death] other than those previously identified and distributed by the trustees" of the trust and, "if any such assets exist, to confirm title to those assets in the successors to [Decedent's estate]." Wife objected to this provision in the order because, in her view, the trust may have disposed of assets inappropriately, and the personal representative should be charged with determining what assets and interests existed at the time of Decedent's death, as opposed to what assets were left after distribution by the trustees.

**{9}**     The second order was more specific. That order required Wife to identify "all entities in which [she] believes that Decedent may have, on the date of his death, owned an interest (legal or equitable), which interest has not been previously identified and distributed by the trustees." The order further required the personal representative to make inquiry of the entities identified and determine whether an entity was a non-profit and, if it was not a non-profit, determine whether Decedent owned an interest in that entity. If there was credible information that an entity was a non-profit or that Decedent did not own an interest in the entity, the order directed the personal representative to report that entity to be a non-asset. The order required the personal representative to prepare a report of his investigation, and the parties could file objections to the report.

**{10}**     Following an investigation, the personal representative filed a report and a supplemental report. He explained at a hearing that several of the entities investigated were non-profits, some entities were actually products owned by other entities, and one could not be identified as a separately existing entity. Of the remaining entities, the personal representative said he could not identify any of them as being entities that Decedent had any interest in.

**{11}**     At the same hearing, Wife's counsel stated that while Wife had no objection to the court's acceptance of the personal representative's report, the authority given to the personal representative was too narrow. Wife maintained that, even if Decedent had no interest in the entities investigated, there was still a question as to whether the entities had possession of assets in which Decedent had an interest. Wife argued that the probate proceeding should be stayed until things had been sorted out in the trust litigation, which would determine the distribution of identified community property.

**{12}**     In response to Wife's arguments, Ms. Khalsa asserted that the personal representative had completed all of the duties ordered by the court, and there was no evidence of any asset whose title needed to be confirmed. Consequently, it would be appropriate for the court to close the estate.

4

**{13}** The district court found that the personal representative had acted in accordance with the court's previous orders and that he had "fulfilled the purposes for which this case was opened pursuant to [Subsection (4)]." The court granted Ms. Khalsa's motion for a final order closing the estate. This appeal followed.

## II.    DISCUSSION

**{14}** Wife argues that the district court erroneously concluded that Subsection (4) prevented the personal representative from investigating what assets were owned by Decedent at the time of his death, regardless of who was in possession of the assets at that time. She further maintains that the district court improperly determined that Subsection (4) precluded the personal representative's investigation into the propriety of the transfer of estate assets to the trust. We agree.

**{15}** The interpretation of Subsection (4) is a matter of law that we review de novo. *In re Estate of Baca*, 1999-NMCA-082, ¶ 12, 127 N.M. 535, 984 P.2d 782. "In interpreting [statutes], we seek to give effect to the Legislature's intent[.]" *Zuni Indian Tribe v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 2013-NMCA-041, ¶ 8, 300 P.3d 133 (internal quotation marks and citation omitted).

### A.    Overview of Subsection (4)

**{16}** Section 45-3-108 begins with a broad prohibition against the initiation of a probate or appointment proceeding more than three years after the decedent's death. It then lists five exceptions to this prohibition, but we are concerned only with the fourth exception—Subsection (4)—which states, in relevant part, that "a formal testacy or appointment proceeding may be commenced" more than three years after the decedent's death "if no proceeding[] concerning the succession or estate administration has occurred within the three-year period after the decedent's death." Section 45-3-108(A)(4). The exception goes on to state, "but the personal representative has no right to possess estate assets as provided in Section 45-3-709 . . . beyond that necessary to confirm title thereto in the successors to the estate and claims other than expenses of administration may not be presented against the estate." Section 45-3-108(A)(4).

**{17}** This subsection permits any appointment or formal testacy proceeding to be initiated more than three years after the decedent's death with three limitations. First, the subsection's exception is not applicable if there has been any other proceeding regarding succession or estate administration during the three-year period. Second, in proceedings brought under this exception, no claims other than for the expenses of administration may be asserted against the estate. Third, the personal representative's right to possess estate assets is limited to the possession necessary to confirm title to the assets in the estate's successors. This case concerns the second and third limitations.

### B.    Second Limitation:  Precluding Claims Against the Estate

5

**{18}**     Regarding the second limitation, we are not persuaded by Ms. Khalsa's argument that Wife is asserting an improper claim against the estate. Ms. Khalsa maintains that this alleged "claim" arose from Wife's argument that unilateral gifts that Decedent may have made to third parties were possibly taken from Wife's share of the community property.

**{19}**     Wife argued in the district court that she was not asserting a claim against the estate. To the contrary, she was asserting that Decedent's estate could only transfer to the trust those assets in which he had an interest and that it could not properly transfer to the trust the assets in which Wife had an interest. On appeal, Wife clarifies that she does not seek to recover any portion of Decedent's estate, nor does she want any damages from the estate. Instead, she wants to identify and confirm title in any asset that represents her share of community property that should never have been deemed to be part of Decedent's estate in the first place.

**{20}**     We conclude that Wife's desire to identify assets representing her share of community property is not a "claim" against Decedent's estate. NMSA 1978, Section 45-1-201(A)(7) (2011), of the Probate Code defines "claims" as including "liabilities of the decedent . . . whether arising in contract, in tort or otherwise and liabilities of the estate that arise at or after the death of the decedent . . . , including funeral expenses and expenses of administration." More relevantly, this subsection states, " 'Claims' does not include estate or inheritance taxes or *demands or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate*[.]" *Id.* (emphasis added); *cf. Houston v. Young*, 1980-NMSC-053, ¶ 6, 94 N.M. 308, 610 P.2d 195 (stating that "[a] widow's one-half community property interest belongs to her and does not become a part of her deceased husband's estate"). Wife's arguments in this case are disputes regarding Decedent's title to the assets alleged to belong to his estate and, therefore, they are not "claims" against the estate.

**C.     Third Limitation:  Restriction on Personal Representative's Right to Possess Assets**

**{21}**     The third limitation on initiating a proceeding under Subsection (4) states that the personal representative "has no right to possess estate assets as provided in Section 45-3-709." Section 45-3-108(A)(4). Thus, to determine what possessory rights Subsection (4) removes from the personal representative, we turn to Section 45-3-709, which generally permits a personal representative to take possession and control of a decedent's property, to manage the property, and to initiate actions to recover possession or to determine title. The statute states:

> Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative,

6

possession of the property by the personal representative will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession thereof, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall take all steps reasonably necessary for the management, protection and preservation of the estate in his possession. He may maintain an action to recover possession of property or to determine the title thereto.

Section 45-3-709. Although Subsection (4) states that the personal representative does not have the right to possess estate assets as provided in Section 45-3-709, it also states that the personal representative may possess estate assets to the extent "necessary to confirm title thereto in the successors to the estate." Section 45-3-108(A)(4). This language is the crux of the present appeal.

## D. Ms. Khalsa's Arguments

{22}     Ms. Khalsa makes two primary arguments in support of her view that this limitation permitted the district court to restrict the breadth of the personal representative's investigation of Decedent's assets. She maintains (1) that Subsection (4)'s limitation on the personal representative's possessory rights prohibited the full-scale investigation of assets sought by Wife and that this position is supported by *In re Estate of Baca*; and (2) the district court properly restricted the personal representative's investigation to only those assets that had not already been transferred to the trust because (a) it had the discretion to do so and (b) allowing a more extensive investigation would thwart Decedent's estate plan to avoid probate. We do not agree.

## 1. First Argument: Limited Possessory Rights and *In re Estate of Baca*

{23}     First, we see nothing in Subsection (4) that prohibits a personal representative from performing an investigation to identify with particularity what assets belonged to the decedent at the time of death. Even if Subsection (4) precludes the management or control of estate assets, as Ms. Khalsa argues, a personal representative could certainly conduct an investigation to ensure that only the decedent's separate property and his or her share of community property were identified as estate assets, whereupon the personal representative could confirm title to those assets in the successors identified in the decedent's will. Such an investigation would not be inconsistent with the limitations on possession stated in Subsection (4).

{24}     The goal of Subsection (4)'s restriction on the personal representative's rights of possession is apparent. In cases such as the present one where no intestacy or formal testacy proceeding has been initiated within the first three years after a decedent's death, the Legislature intended to preclude the personal representative from selling or otherwise

7

exerting possessory control over assets that had been in the possession of others for more than three years. However, the Legislature wanted to provide a mechanism for a personal representative to confirm title in an estate's successors for purposes of establishing the validity of title. *See* NMSA 1978, § 45-3-102 (2005) (stating that "to be effective to prove the transfer of any property . . . , a will must be declared to be valid").

**{25}** Ms. Khalsa's reliance on *In re Estate of Baca* is also misplaced. That case interpreted Subsection (4) and stated that "an estate may be settled through inaction and passage of time" consistent with the Probate Code's policy "to promote the speedy and efficient liquidation and distribution of estates, while allowing claimants adequate time to protect themselves." 1999-NMCA-082, ¶ 24. This statement is correct in the context of the circumstances in *In re Estate of Baca*, which involved a *claim* asserted against an estate by a non-devisee seeking enforcement of an alleged oral agreement the decedent entered into prior to death. *See id.* ¶¶ 8-9. The present case does not involve a claim against the estate.[1]

**{26}** Furthermore, what Wife seeks—an investigation to identify what assets were properly in Decedent's estate—is consistent with another policy of the Probate Code, which is "to discover and make effective the intent of a decedent in distribution of the decedent's property." NMSA 1978, § 45-1-102(B)(2) (2011). Effectuating Decedent's intent first requires identification of the property subject to distribution.

**2.      Second Argument: Investigation Limited to Assets Not Transferred to Trust**

**a.      District Court's Discretion**

**{27}** We see nothing in Subsection (4) and Ms. Khalsa has not cited any other portion of the Probate Code that confers discretion on the district court to restrict a personal representative's investigation of what assets are properly in the decedent's estate. Ms. Khalsa relies solely on *Schwartzman v. Schwartzman Packing Co.*, 1983-NMSC-010, 99 N.M. 436, 659 P.2d 888, for the notion that a probate court may, in its discretion, circumscribe a personal representative's investigatory obligations. But *Schwartzman* is not helpful. In that case, our Supreme Court interpreted a statute permitting a shareholder to inspect a corporation's books and records " 'at any reasonable time or times, for any proper purpose.' " *Id.* ¶ 8 (quoting NMSA 1978, § 53-11-50(B) (1983)). The Court stated that "[a district] court must of necessity have some discretion in determining when and in what manner the right of examination should be exercised." *Schwartzman*, 1983-NMSC-010, ¶ 11.

---

[1]We clarify that this Court relied on two cases in *In re Estate of Baca* that are not relevant to the interpretation of Subsection (4) because they were decided before that provision of the Uniform Probate Code was adopted by the Uniform Laws Commission in 1993. Those cases are *In re Estate of Taylor*, 675 P.2d 944 (Mont. 1984) and *In re Estate of Wood*, 710 P.2d 476 (Ariz. Ct. App. 1985).

**{28}**     The circumstances in *Schwartzman* are not similar to those in the present case. Subsection (4) does not contain any language suggesting that there are any limitations, other than possessory ones, placed on the personal representative when a formal testacy proceeding is initiated more than three years after the decedent's death. Therefore, in cases where Subsection (4) applies, the personal representative would have the same obligations that are imposed when the personal representative is appointed within the three-year period following the decedent's death. Among those obligations is the duty to "prepare an inventory of property owned by the decedent at the time of his death, listing it with reasonable detail and indicating as to each listed item its estimated value as of the date of the decedent's death." NMSA 1978, § 45-3-706(A) (1983). In fact, the personal representative is subject to removal for failure to complete the inventory responsibilities. *See* NMSA 1978, § 45-3-611(B)(6) (1975) (permitting removal of the personal representative for "fail[ure] to perform any duty pertaining to the office"). Thus, the obligation to inventory estate assets is not subject to discretionary limitation by the court presiding over the probate.

### b.      Unrestricted Investigation Does Not Thwart the Estate Plan

**{29}**     We also conclude that allowing the personal representative to investigate and identify estate assets, including assets previously transferred to the trust, would not thwart Decedent's estate plan. Decedent's will contained several devises of specific personal property and then provided that the residue of the estate would pour over into the trust for distribution consistent with the trust documents. An investigation would allow the personal representative to identify what assets were Decedent's separate property or his share of the community property, and those assets would properly be the subject of the will's pour-over provision.

**{30}**     If, following an investigation, the personal representative identified assets previously transferred to the trust that constituted Wife's share of community property, the personal representative could not take possession of those assets given Subsection (4)'s limitations on the personal representative's possessory rights. However, the parties appear to agree that reallocation of community property that was improperly transferred to the trust was the subject of the trust litigation.

## III.     CONCLUSION

**{31}**     We hold that the district court improperly interpreted Subsection (4) as restricting the personal representative's duties to investigate and inventory the assets of Decedent's estate. On remand, the personal representative may conduct a complete investigation and inventory of assets in which Decedent had an interest at the time of his death. The personal representative may confirm title to any assets that are properly in the possession of a devisee, and he may inventory the assets that were properly identified as residue for transfer to the trust. Any claim Wife may have for reallocation of improperly transferred community property was the subject of the trust litigation.

9

**{32}**   For the foregoing reasons, we reverse the district court's judgment and remand for proceedings consistent with this Opinion.

**{33}   IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _Puri v. Khalsa_, No. 31,178**

**APPEAL AND ERROR**
Standard of Review

**STATUTES**
Interpretation

**WILLS, TRUSTS, AND PROBATE**
Administration of Estate
Allowances
Claims Against Estate
Compensation of Attorneys and Administration
Execution
Personal Representative
Testamentary Intent
Time Limitations
Trusts, General